UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL A. BROWN,

    Plaintiff,

v.                                        Case No:   2:17-cv-337-FtM-60MRM

MICHAEL MCCLURE, M.D., PhD,
BRYN MARCUS, and K. JOHNSON,

    Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on the Defendants Michael McClure, Bryn Marcus, and Kelly Johnson's Motion for Summary Judgment (Doc. #92) filed on January 11, 2019. Plaintiff filed his Opposition Motion for Summary Judgment (Doc. #107) on April 26, 2019. For the reasons set forth below, the Motion is granted.

## STANDARD OF REVIEW

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hickson*

*Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Anderson*, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 819 (11th Cir. 1999)(quoting *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1315 (11th Cir. 2007).

## II. BACKGROUND

Plaintiff, who is incarcerated within the Florida Department of Corrections, initiated this action by filing a *pro se* civil rights complaint form under 42 U.S.C. § 1983. (Doc. #1). Plaintiff is proceeding on his Second Amended Complaint (Doc. # 60), filed on January 26, 2016. Plaintiff alleges that Defendants McClure, Marcus, and Johnson violated his Eighth Amendment right to be free from cruel and unusual punishment by knowingly and intentionally failing to treat his depression and suicidal tendencies. (*Id.* at 13). Plaintiff attempted suicide on three different occasions. (*Id.* at 13-14). Defendants McClure, Marcus, and Johnson were healthcare

providers at Charlotte Correctional Institution (CCI) during Plaintiff's attempted suicides. (*Id.* at 13).

### III. <u>DISCUSSION</u>

Plaintiff brings three counts against all Defendants alleging that Defendants violated his Eighth Amendment rights: Count I, deliberate indifference to Plaintiff's medical needs; Count II, discrimination against Plaintiff by deliberate indifference to his medical needs while under close management; Count III, pain and suffering caused by Defendant's deliberate indifference to suicidal tendencies. Defendants argue they are entitled to summary judgment because Plaintiff merely disputes Defendants' treatment decisions.

**Count I Deliberate Indifference**

Prisoners have the right "to receive medical treatment for illness and injuries, which encompasses a right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries, including suicide." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1115 (11th Cir.2005) (quoting *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir.1985)). "Because jail suicides are analogous to the failure to provide medical care, deliberate indifference has become the barometer by which suicide cases involving convicted prisoners as well as pretrial detainees are tested." *Rolle v. Brevard Cty., Fla.*, No. 606CV-714-ORL-19JGG, 2007 WL 328682, at *6 (M.D. Fla. Jan. 31, 2007) (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1274-75 (11th Cir.1989). To establish an Eighth Amendment violation for failure to protect against self-inflicted injuries, a prisoner must show that the prison official(s) displayed deliberate indifference to the prisoner's threat of taking of his own life. *Cook ex rel. Estate of Tessier*, 402 F.3d at 1115.

3

To establish deliberate indifference, a plaintiff must show that he had an "objectively serious medical need." *Id.* A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citations omitted). "The medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.*

Second, "to establish a defendant's deliberate indifference, the plaintiff has to show that the defendant had '(1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] ... that risk; (3) by conduct that is more than mere negligence.' " *Cagle v. Sutherland*, 334 F.3d 980 (11th Cir.2003) (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir.1999)). "Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). "A difference in medical opinion does not constitute deliberate indifference so long as the treatment is minimally adequate." *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citing *Harris v. Thigpen*, 941 F.2d 1495, 1504-05 (11th Cir. 1991)). A doctor's decision about the type of medicine that should be prescribed is generally "a medical judgment" that is "an inappropriate basis for imposing liability under section 1983." *Adams v. Poag*, 61 F.3d 1537, 1547 (11th Cir. 1995); *see also Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (stating that "[m]ere medical malpractice, however, does not constitute deliberate indifference. Nor does a simple difference in medical opinion.").

Under this Circuit's precedent, in a prison suicide case, deliberate indifference requires that the defendant deliberately disregard "a strong *likelihood* rather than a mere possibility that

4

the self-infliction of harm will occur." *Id.* at 986 (emphasis in original) (quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir.1990)). "Failure to take measures to protect an inmate from committing suicide can only constitute deliberate indifference so long as it is a failure that goes beyond negligence or medical malpractice." *Freeman v. Lebedovych*, 186 F. App'x. 943, 944 (11th Cir. 2006). Furthermore, the official may escape liability for known risks "if [they] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

### a. Whether Plaintiff had a Serious Medical Need

Plaintiff claims that he has serious medical needs in the form of depression and suicidal tendencies. Dr. McClure did not find that Plaintiff suffered from depression but diagnosed Plaintiff with Dissocial Personality Disorder. (Doc. #92-3 at ¶ 6). Dissocial Personality Disorder is a "medical condition in which a person consistently shows no regard for right or wrong; ignores the rights and feelings of others; persistently lies or deceives to exploit others; engages in unnecessary risk-taking or dangerous behavior with no regard for the safety of self or others." (*Id.* at ¶ 7). Based upon Dr. McClure's diagnoses, the Court finds Plaintiff had a serious medical condition that could result in Plaintiff inflicting self-harm.

### b. Whether Defendants were Deliberately Indifferent

Having found that Plaintiff had a serious medical need, the Court must address each Defendants' actions to see if they were deliberately indifferent to that need. Plaintiff claims that all three Defendants were instrumental in all three of his suicide attempts. (Doc. #60 at 26).

#### (1) Dr. McClure

Dr. McClure is a psychiatrist who was employed at CCI and treated Plaintiff from July 27, 2016, until he was transferred to Union CI on August 11, 2016. Plaintiff alleges that Dr.

5

McClure was deliberately indifferent to his medical needs and responsible for the July 21, 25, and August 3, 2016 suicide attempts because he removed him from Self Harm Observation Status/Isolation Management Room (SHOS/IMR) and would not admit him to CCI's Crisis Stabilization Unit (CSU). (Doc. #60 at 26).

On July 21, 2016, Plaintiff used his mouth to cut his antecubital (AC) vein in his left elbow. (*Id.* at 22). Plaintiff was placed in SHOS/IMR. (*Id.* at 24). After Plaintiff's first suicide attempt, he was placed in SHOS/IMR until July 25, 2016. After being released on July 25, 2016, Plaintiff made his second suicide attempt. (Doc. #60 at 25). He was taken to the hospital and again placed into SHOS/IMR when he returned on July 27, 2016. (Doc. #60 at 24-25). After the second suicide attempt, Dr. McClure saw Plaintiff daily; however, he found Plaintiff uncooperative and noted he often refused to participate in treatment. (Doc. #92-3 at ¶ 10).

On August 3, 2016, Dr. McClure — over Plaintiff's objections — released Plaintiff from SHOS/IMR. (Doc. #60 at 26). Plaintiff used a spork to reopen the wound on his AC vein. (*Id.*) Plaintiff was again taken to an outside hospital and treated for his wounds because his wound became septic. (Doc. #92-3 at ¶ 10). Dr. McClure states that Plaintiff was not taken to the hospital because of his modest blood loss. (*Id.*)

Upon his return to CCI Plaintiff was placed on SHOS/IMR status. (Doc. #60 at 26). Dr. McClure then recommended that Plaintiff be transferred to Union CI and placed in CSU because of the likelihood that Plaintiff would continue to harm himself until he got what he wanted. (Doc. #92-3 at ¶ 10). On August 11, 2016, Plaintiff was transferred to Union CI and placed in CSU.

While Plaintiff claimed that he was depressed and suicidal, Dr. McClure diagnosed him with Dissocial Personality Disorder. (Doc. 92-3 at ¶ 6). Dr. McClure discounted Plaintiff's claim of depression because he and others observed Plaintiff laughing and joking around with other

inmates and prison staff, which is inconsistent with someone suffering from depression. (*Id.* at ¶ 5). Dr. McClure opined that the incidents on July 21, 25, and August 3, 2016, were not genuine attempts to commit suicide but signs that Plaintiff was harming himself because he disagreed with his treatment. (*Id.* at ¶ 9). Dr. McClure noted that each time Plaintiff was released from SHOS/IMR he would harm himself to justify his need for treatment and to compel the medical intervention of his choice. (*Id.* at ¶ 10). Dr. McClure noted that false suicide attempts are symptomatic of someone with Dissocial Personality Disorder. (*Id.*)

While Plaintiff disagreed with Dr. McClure's diagnoses and subsequent treatment, the Court finds that Dr. McClure responded reasonably to Plaintiff's suicide attempts. Plaintiff was placed into SHOS/IMR on three separate occasions for four days of observation before being discharged. Plaintiff was treated daily by Dr. McClure when he came directly under his care after the July 27, 2016 suicide attempt. When it became apparent that Plaintiff would continue to harm himself until he was placed in CSU, Dr. McClure transferred him to the CSU at Union CI. There is no liability to an official who reasonably responds to a known risk of self-harm, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 835.

Furthermore, whether to place Plaintiff into the CSU unit was a medical judgment made by Dr. McClure based upon his diagnoses of Plaintiff's mental condition. Medical judgment decisions do not constitute deliberate indifference under the Eighth Amendment. *See Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir.1995) (finding the question of whether governmental actors should have employed different forms of treatment is a classic example of a matter for medical judgment). Viewing the facts most favorable to the nonmovant, Plaintiff fails to set forth a cognizable claim of deliberate indifference against Dr. McClure.

### (2) Claims against Bryn Marcus

Bryn Marcus was a behavioral health specialist at CCI and treated Plaintiff beginning on July 27, 2016. (Doc. #60 at 24). Marcus saw Plaintiff every morning for one week. (*Id.*) Plaintiff alleges that Marcus breached his duty of care with deliberate indifference to his serious medical condition by releasing him from SHOS/IMR — over his objections — which resulted in Plaintiff's suicide attempt on August 3, 2016.

Viewing the facts in favor of the non-movant, Marcus did not act with deliberate indifference to Plaintiff's medical need. After Plaintiff came under Marcus' care on July 27, 2016, he treated Plaintiff every day until August 3, 2016, when Plaintiff made a third suicide attempt. (Doc. #60 at 25). Marcus did not have the authority to transfer Plaintiff to the CSU nor discharge him from SHOS/IMR. (Doc. #92-4 at ¶ 8, 9). Marcus responded reasonably to Plaintiff's risk by treating him every day, even though Plaintiff ultimately harmed himself, such harm does not rise to the level of deliberate indifference. *See Farmer,* 511 U.S. at 835. Even if Marcus had such authority and placed Plaintiff in SHOS/IMR instead of the CSU, Plaintiff's claims would not rise to the level of an Eighth Amendment violation because Plaintiff's claims against Marcus are a simple difference in medical treatment. And a difference over medical treatment does not constitute deliberate indifference. *Adams,* 61 F.3d at 1545.

### (3) Claims against Kelly Johnson, ARPN.

Johnson is an advanced nurse practitioner who was employed as a psychiatric nurse at CCI in July of 2016. On July 21, 2016, Plaintiff spoke with an unknown counselor about feeling suicidal because he felt worthless and could not get an appointment to see a doctor. (Doc. #60 at 23). Later that day, Nurse Johnson spoke with Plaintiff about his condition for about five (5)

minutes. (*Id.* at 24). Thereafter, Plaintiff made his first suicide attempt. (Doc. # 60 at 22; 92 at 3).

Four days after that encounter on July 25, 2016, Plaintiff was discharged from SHOS/IMR. (Doc. #60 at 22). Plaintiff says that he strenuously objected to being discharged but Nurse Johnson ignored his concerns because she was deliberately indifferent to his mental health. (*Id.* at 24). About an hour after his discharge, Plaintiff took a cutting tool and reopened his AC vein. (*Id.*) Plaintiff was taken to an outside hospital and did not return to CCI until July 27, 2016, where he was placed in the direct care of Dr. McClure. (*Id.*)

While Plaintiff claims that Nurse Johnson denied him treatment, Nurse Johnson denies that she discharged Plaintiff from SHOS/IMR. (Doc. #108-17 at Interrogatories 11, 12). Nurse Johnson stated that she did not believe that she was part of Plaintiff's medical team but simply followed Dr. McClure's directives to discharge Plaintiff from SHOS/IMR. (*Id.*) Nurse Johnson said that Dr. McClure believed Plaintiff was being uncooperative with his care and was refusing treatment and he ordered Plaintiff discharged. (*Id.*)

Nurse Johnson met with Plaintiff, she discussed his condition, she then followed the directive of Dr. McClure and discharged him from SHOS/IMR. (Doc. #108 at Interrogatory 11). Nurse Johnson states that on another occasion when she went to speak with Plaintiff that he was openly gunning (masturbating) at her from his cell door. (Doc. #108 at Interrogatory 12).

Based upon the facts in the record, Nurse Johnson responded reasonably to Plaintiff's risk and simply followed Dr. McClure's directive to discharge Plaintiff from SHOS/IMR. While Plaintiff disagreed with Nurse Johnson's treatment actions, a simple disagreement over medical treatment does not constitute deliberate indifference. *Adams*, 61 F.3d at 1545. Summary Judgment is granted as to the deliberate indifference claim against Nurse Johnson.

**Count II Discrimination**

As to Count II Discrimination, there are no allegations in the Amended Complaint which suggest Plaintiff is a member of a class protected under the equal protection clause, nor are there allegations that he is the member of a class of individuals of the type that Congress was trying to protect when it passed the law codified at Section 1983. *See Rolle v. Brevard Cty., Fla.*, No. 606CV-714-ORL-19JGG, 2007 WL 328682, at *14 (M.D. Fla. Jan. 31, 2007) (noting that Congress has specifically stated that prisoners are not a class offered special protection under the equal protection clause). Thus, Count II fails to state a cognizable claim for discrimination.

**Count III Pain and Suffering**

Plaintiff alleges that Defendants' actions deviated from the professional norms and their deliberate indifference to his mental health treatment caused him pain and suffering. Plaintiff says he suffered mental and physical pain from his self-inflicted wounds, sleeplessness, nightmares, and low self-esteem due to Defendants' deliberate indifference.

Plaintiff's pain and suffering claim is predicated upon his allegation of deliberate indifference. As set forth above, the material facts establish that Plaintiff's complaint is nothing more than a disagreement with Defendants' treatment regimen. A disagreement with treatment options will not support a claim for deliberate indifference. *Adams*, 61 F.3d at 1545 (holding whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding" constitutional liability). Since the Court found no basis for Plaintiff's deliberate indifference claim, his claim for pain and suffering caused by deliberate indifference fails.

Accordingly, it is now

**ORDERED:**

1. Defendants Michael McClure, Bryn Marcus, and Kelly Johnson's Motion for Summary Judgment (Doc. #92) is **GRANTED** and this case is **DISMISSED with prejudice**.

2. The Clerk shall enter judgment accordingly, terminate all pending motions and deadlines as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this 6th day of August 2019.

THOMAS P. BARBER
UNITED STATES DISTRICT JUDGE

SA: FTMP-2
Copies:
Counsel of record